1
2
3
4
5      UNITED STATES DISTRICT COURT
6     EASTERN DISTRICT OF WASHINGTON

7 JEANNE M.,

8           Plaintiff,

9    v.

10 COMMISSIONER OF SOCIAL
SECURITY,

11
         Defendant.
12

NO:  1:21-CV-3060-TOR

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

13     BEFORE THE COURT are the parties' cross motions for summary

14 judgment (ECF Nos. 17, 21).  The motions were submitted for consideration

15 without oral argument.  The Court has reviewed the administrative record and the

16 parties' completed briefing and is fully informed.  For the reasons discussed below,

17 Plaintiff's Motion for Summary Judgment (ECF No. 17) is DENIED, and

18 Defendant's Motion for Summary Judgment (ECF No. 21) is GRANTED.

19 //

20 //

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted). Further, a district court "may not reverse an ALJ's decision on account of an error

that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)–(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not

disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is as severe, or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. §

404.1545(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work

1  "exists in significant numbers in the national economy."  20 C.F.R. § 416.1560(c);

2  *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

3  ### ALJ'S FINDINGS

4  Plaintiff applied for a period of disability and disability insurance benefits on

5  September 25, 2018, alleging disability beginning November 26, 2016.  Tr. 15.

6  The claim was denied initially on March 1, 2019, and upon reconsideration on May

7  29, 2019.  *Id*.  Plaintiff requested a hearing.  *Id*.  A telephonic hearing was held

8  before an administrative law judge ("ALJ") on August 4, 2020.  *Id*.  On August 31,

9  2020, the ALJ denied Plaintiff's claim.  Tr. 30.  The Appeals Council denied

10  review on March 9, 2021.  Tr. 1.

11  As a threshold matter, the ALJ found Plaintiff met the insured status

12  requirements of the Social Security Act through December 31, 2021.  Tr. 17.  At

13  step one, the ALJ found that Plaintiff had not engaged in substantial gainful

14  activity since November 26, 2016, the alleged onset date.  *Id*.  At step two, the ALJ

15  found that Plaintiff had the following severe impairments: fibromyalgia; congenital

16  heart defect, causing premature ventricular contractions; post-traumatic stress

17  disorder; dysthymia; and panic disorder.  *Id*.  At step three, the ALJ found Plaintiff

18  did not have an impairment or combination of impairments that meets or medically

19  equals the severity of one of the listed impairments.  Tr. 18.  The ALJ then

20  determined Plaintiff has the residual functioning capacity to perform light work

except as follows:

> The claimant is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently.  She can stand and/or walk about 6 hours in an 8-hour workday and can sit about 6 hours.  She can frequently climb ramps and stairs but only occasionally ladders, ropes, and scaffolds.  She can occasionally stoop and frequently balance, kneel, crouch, and crawl.  She should have only occasional exposure to extreme cold, excessive vibrations, hazardous machinery, and unprotected heights.  She is able to understand, remember, and carryout simple, routine instructions.  She can have brief and superficial interactions with supervisors, coworkers, and the public.

Tr. 20.

At step four, the ALJ found Plaintiff could not perform past relevant work. Tr. 28.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, residual functional capacity, and testimony from a vocational expert, there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as a small products assembler, marking clerk, and office helper.  Tr. 28–29.  The ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from November 26, 2016, the alleged onset date, through August 31, 2020, the date of the ALJ's decision.  Tr. 29–30.

## ISSUES

Plaintiff seeks judicial review of the ALJ's final decision denying her disability insurance benefits under Title II of the Social Security Act.  Plaintiff raises the following issues:

1    1.  Whether the ALJ properly considered Plaintiff's subjective symptom

2        testimony; and

3    2.  Whether the ALJ properly evaluated the medical opinion evidence.

4   ECF No. 17 at 4, at 17.

## DISCUSSION

### A.    Plaintiff's Subjective Symptom Testimony

7        Plaintiff contends the ALJ failed to provide clear and convincing reasons for

8   rejecting Plaintiff's subjective symptom testimony.  ECF Nos. 17 at 17; 22 at 6.

9   An ALJ engages in a two-step analysis to determine whether to discount a

10  claimant's testimony regarding subjective symptoms.  SSR 16-3p, 2016 WL

11  1119029, at *2.  "First, the ALJ must determine whether there is 'objective

12  medical evidence of an underlying impairment which could reasonably be

13  expected to produce the pain or other symptoms alleged.'"  *Molina*, 674 F.3d at

14  1112 (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).  "The

15  claimant is not required to show that [the claimant's] impairment 'could reasonably

16  be expected to cause the severity of the symptom [the claimant] has alleged; [the

17  claimant] need only show that it could reasonably have caused some degree of the

18  symptom.'"  *Vasquez*, 572 F.3d at 591 (quoting *Lingenfelter v. Astrue*, 504 F.3d

19  1028, 1035–36 (9th Cir. 2007)).

20       Second, "[i]f the claimant meets the first test and there is no evidence of

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8

malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted).  General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he or she discounted claimant's symptom claims).  "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions

due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7–8; 20 C.F.R. § 404.1529(c).  The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found Plaintiff's impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the evidence.  Tr. 21.  In arriving at this conclusion, the ALJ considered several of the factors described above.

As to Plaintiff's daily activities, the ALJ noted Plaintiff acknowledged she could care for her young son and their pets.  Tr. 21.  Plaintiff was also able to perform personal care tasks, prepare meals, complete basic housework, drive a car, walk, and shop in stores.  *Id.*  Plaintiff reported meeting other new moms at the library and socializing with them frequently.  Tr. 24.  Plaintiff also attended a mom's group and story time at the library.  *Id.*  While the Ninth Circuit has cautioned against reliance on "certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise" to discount a plaintiff's symptom allegations, the ALJ here considered other factors and found additional reasons for discrediting Plaintiff's subjective symptom testimony.  *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10

As to the intensity and persistence of Plaintiff's impairments, the ALJ found the objective medical evidence did not support the degree of impairment Plaintiff alleges. Tr. 21. Plaintiff alleges an onset date of November 26, 2016, but the ALJ noted the medical records did not reflect treatment related to Plaintiff's cardiac impairments prior to May 2017 or for her musculoskeletal issues prior to December 2017. Tr. 21. Additionally, Plaintiff denied back pain, joint pain, and headaches during a May 2017 visit and did not appear in acute distress, presented with normal motor strength and tone, and normal movement of all extremities. *Id.* One month later, Plaintiff again denied dyspnea, joint pain, or muscle weakness. *Id.* In July 2017, Plaintiff denied chronic pain or headache and her physical exam revealed normal findings. *Id.* Despite alleging neck pain and headaches, exam findings revealed intact cranial nerves, negative Tinel's and Phanel's bilaterally, and minimal facet arthrosis and disc desiccation. Tr. 21–22. Additionally, imaging of Plaintiff's lumbar and cervical spine was unremarkable. Tr. 22.

Finally, the ALJ observed that since October 2018, Plaintiff's treatment has consisted primarily of infrequent visits to one care provider, and during those visits, she reported few physical complaints other than worsening fibromyalgia during the COVID-19 pandemic; the records did not reflect ongoing complaints of other physical pain or headaches. *Id.* Specifically, in January, March, and September 2019, Plaintiff was noted to have normal range of motion and strength

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11

with no tenderness or swelling.  Tr. 22.  Similarly, a February 2020 examination showed no tenderness or swelling.  *Id*.  While an ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence, such objective medical evidence is still a relevant factor.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346–47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

Regarding the type, dosage, efficacy, and side effects of any medication Plaintiff took to alleviate her symptoms, the ALJ noted Plaintiff's mental health symptoms were controlled with medication.  Tr. 22–25.  For example, in March 2017, Plaintiff was prescribed Ativan to help with her sleep and anxiety.  Tr. 23. Plaintiff later reported she could not sleep unless she took the Ativan.  Tr. 24.  In June 2017, Plaintiff was prescribed sertraline and hydroxyzine to address her depression.  *Id*.  Plaintiff reported improved symptoms the following month.  *Id*. In October 2018, Plaintiff was prescribed Paxil and reported some success.  Tr. 22, 24.  Throughout 2019, Plaintiff also took Lorazepam for anxiety and reported improved symptoms.  Tr. 25.  More recently, Plaintiff was prescribed naltrexone in June 2020 for her fibromyalgia and reported no complications.  Tr. 22. "Impairments that can be controlled effectively with medication are not disabling."

1  *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) (citations omitted).

2       Relatedly, the ALJ considered factors that precipitated or aggravated

3  Plaintiff's limitations.  In particular, the ALJ noted that Plaintiff's medical records

4  reflected success with medication, but also indicated Plaintiff was resistant to

5  medication and held "very anti-drug" opinions, often switching or discontinuing

6  her medication after short periods of time.  Tr. 23–24.  To illustrate, Plaintiff was

7  prescribed Paxil for her mental health conditions in October 2018 and reported

8  sleeping, feeling calmer, and was not crying.  Tr. 22.  However, one week later,

9  Plaintiff requested she be switched to Cymbalta.  *Id*.  One week after switching to

10  Cymbalta, Plaintiff reported having difficulty sleeping and requested she be

11  switched back to Paxil.  *Id*.  In June 2019, Plaintiff complained that Paxil was

12  causing her to gain weight and requested a prescription for Zoloft.  Tr. 22.

13  Additionally, Plaintiff took Ativan to help her sleep, and reported improved

14  symptoms, but self-discontinued the medication in July 2018.  Tr. 24.  At least one

15  care provider expressed concern about Plaintiff's self-discontinuance of

16  medication.  *Id*.

17       The ALJ also considered other treatments or measures Plaintiff tried to

18  reduce her symptoms.  Plaintiff reported having success with an anti-inflammatory

19  diet in May 2018.  Tr. 23.  In September 2018, Plaintiff reported improved

20  symptoms after losing weight.  *Id*.  Throughout the relevant period, Plaintiff also

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13

1    tried naturopathic treatments, and had tried chiropractic and acupressure treatments

2    in the past.  Tr. 21–22.  Plaintiff sought counseling for her anxiety, which she

3    stated helped control the anxiety.  Tr. 24.  The Ninth Circuit has "previously

4    indicated that evidence of conservative treatment is sufficient to discount a

5    claimant's testimony regarding severity of an impairment."  *Parra v. Astrue*, 481

6    F.3d 742, 751 (9th Cir. 2007) (internal quotations omitted).

7        Finally, the ALJ noted Plaintiff continued to work as late as June 2017, after

8    the alleged onset date.  Tr. 23.  Plaintiff's argument that the ALJ's findings are not

9    supported by substantial evidence is unpersuasive.  Plaintiff cites only to her

10   subjective testimony to support her assertions; she does not cite to any additional

11   evidence in the record.  ECF No. 17 at 18.  Plaintiff's disagreement with the ALJ's

12   conclusions is insufficient to overturn the ALJ's decision.  "[T]he key question is

13   not whether there is substantial evidence that could support a finding of disability,

14   but whether there is substantial evidence to support the Commissioner's actual

15   finding." *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997).  The Court

16   finds the ALJ provided clear and convincing reasons supported by substantial

17   evidence in the record to discount Plaintiff's subjective symptom testimony.

18   **B.  Medical Opinion Evidence**

19       Plaintiff argues the ALJ improperly evaluated the medical opinion evidence

20   of Dr. Byrd, Dr. Drenguis, and two DDS consultants.  ECF No. 17 at 4–16.  As an

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14

1   initial matter, for claims filed on or after March 27, 2017, new regulations apply

2   that change the framework for how an ALJ must evaluate medical opinion

3   evidence.  20 C.F.R. § 404.1520c; *see also Revisions to Rules Regarding the*

4   *Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18,

5   2017).  The ALJ applied the new regulations because Plaintiff filed her Title II

6   claim after March 27, 2017.  *See* Tr. 15.

7        Under the new regulations, the ALJ will no longer "give any specific

8   evidentiary weight . . . to any medical opinion(s)."  *Revisions to Rules*, 2017 WL

9   168819, 82 Fed. Reg. 5844-01, 5867–68.  Instead, an ALJ must consider and

10  evaluate the persuasiveness of all medical opinions or prior administrative medical

11  findings from medical sources.  20 C.F.R. § 404.1520c(a)–(b).  The factors for

12  evaluating the persuasiveness of medical opinions and prior administrative medical

13  findings include supportability, consistency, relationship with the claimant,

14  specialization, and "other factors that tend to support or contradict a medical

15  opinion or prior administrative medical finding" including but not limited to

16  "evidence showing a medical source has familiarity with the other evidence in the

17  claim or an understanding of our disability program's policies and evidentiary

18  requirements."  20 C.F.R. § 404.1520c(c)(1)–(5).

19       The ALJ is required to explain how the most important factors,

20  supportability and consistency, were considered.  20 C.F.R. § 404.1520c(b)(2).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15

These factors are explained as follows:

> (1) *Supportability.*  The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) *Consistency*.  The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)–(2).

The ALJ may, but is not required to, explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. § 404.1520c(b)(2).  However, where two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how "the most persuasive factors" were considered.  20 C.F.R. § 404.1520c(b)(2).

The parties dispute whether Ninth Circuit law that predates the new regulations apply.  ECF Nos. 17 at 5; 21 at 12.  The Ninth Circuit currently requires the ALJ to provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  When a treating or examining

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16

physician's opinion is contradicted, the Ninth Circuit has held the medical opinion can only "be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830–31 (internal citation omitted).

At this time, the Ninth Circuit has not addressed whether these standards still apply when analyzing medical opinions under the new regulations. For purposes of the present case, the Court finds that resolution of this issue is unnecessary. *See Allen T. v. Saul*, No. EDCV 19-1066-KS, 2020 WL 3510871, at *3 (C.D. Cal. June 29, 2020) (citing *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Services*, 545 U.S. 967, 981–82 (2005) ("[T]he Court is mindful that it must defer to the new regulations, even where they conflict with prior judicial precedent, unless the prior judicial construction 'follows from unambiguous terms of the statute and thus leaves no room for agency discretion.'")).

### 1. Dr. Byrd

Plaintiff essentially argues the ALJ erroneously rejected the opinion of Dr. Byrd by failing to appreciate the "waxing and waning" nature of fibromyalgia. ECF No. 17 at 6–11. Dr. Bryd filled out Medical Report forms in October 2018 and August 2020. Tr. 26. In both assessments, Dr. Byrd opined that Plaintiff would have to lie down for one hour at a time and that regular and continuous working would cause Plaintiff's condition to worsen. *Id*. He further stated Plaintiff would miss four or more days from work per month. *Id*.

1   The ALJ did not find Dr. Byrd's assessment well-supported by his own

2   treatment records or consistent with Plaintiff's overall medical history.  Tr. 26.  For

3   example, in February 2019, Dr. Byrd noted Plaintiff was doing well on Paxil.  *Id*.

4   In June 2019, Plaintiff complained of certain side effects from the medication, but

5   no other complaints were reported.  *Id*.  Dr. Byrd then indicated Plaintiff did not

6   need to be seen for three to four months.  *Id*.  Thus, Dr. Byrd's Medical Report

7   opinions were not supported by his own exam findings during the same time

8   period.  Additionally, Plaintiff's primary care records showed normal range of

9   motion and strength, no tenderness, and no swelling.  *Id*.  The records further

10  indicated Plaintiff's symptoms were well controlled with medication.  *Id*.

11  Therefore, Dr. Byrd's opinion that Plaintiff would miss significant work or that

12  work would worsen her condition was inconsistent with Plaintiff's medical record

13  as a whole.  *Id*.

14         Plaintiff's argument that the ALJ did not consider Dr. Byrd's opinions in

15  conjunction with records from other medical care providers is contrary to what is

16  stated in the ALJ's opinion.  ECF No. 7.  As noted, the ALJ specifically found Dr.

17  Byrd's opinion was inconsistent with other records in Plaintiff's file.  Tr. 26.

18  Additionally, Plaintiff's allegation that the ALJ failed to appreciate the nature of

19  fibromyalgia is also incorrect.  Rather, the ALJ concluded that Dr. Byrd's opinion

20  regarding the severity of Plaintiff's fibromyalgia simply did not comport with the

weight of the evidence.  *Id*.  Where the ALJ's interpretation of the record is

reasonable, as it is here, it should not be second-guessed.  *Rollins*, 261 F.3d at 857.

Additionally, the ALJ's finding is consistent with Ninth Circuit law that a medical

opinion may be rejected by the ALJ if it is brief, conclusory, or inadequately

supported.  *Bray v. Comm'r of Soc. Sec. Admin*, 554 F.3d 1219, 1228 (9th Cir.

2009).  The Court finds the ALJ's conclusion is supported by substantial evidence.

### 2.  *Dr. Drenguis*

Plaintiff argues the ALJ improperly rejected Dr. Drenguis's opinion by

failing to accept Dr. Drenguis's assessment of Plaintiff's ability to walk and stand

and her limited ability to manipulate with her left hand.  ECF No. 17 at 11–16.

Dr. Drenguis conducted a consultative exam of Plaintiff in April 2019.  Tr. 25.

With regard to Plaintiff's ability to walk and stand, Dr. Drenguis opined that

Plaintiff would be able to stand and walk for at least four-hour in a workday and

could sit for at least six.  *Id*.  The ALJ rejected Dr. Drenguis's opinion, finding it

was inconsistent with his other exam findings.  Specifically, while Dr. Drenguis

noted Plaintiff was positive for 15 tender points and could perform only two-thirds

of a squat, he otherwise found Plaintiff's physical condition within normal limits.

Tr.  26.  Dr. Drenguis also found Plaintiff could move normally without obvious

discomfort, had normal gait and station, could walk on her heels, toes, and in

tandem, had full strength, and a normal range of motion.  *Id*.  The ALJ concluded

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 19

such findings did not support Dr. Drenguis's conclusion that Plaintiff had limited

walking and standing abilities.  *Id.*

As to Plaintiff's hand limitations, Dr. Drenguis noted some decreased

sensation in Plaintiff's left hand with positive Tinel's.  *Id.*  However, he also noted

Plaintiff had full strength in her bilateral upper extremities, including grip, full

range of motion in the upper extremities, and was able to perform fine motor

activities without problems.  *Id.*  Thus, the ALJ found Dr. Drenguis's opinion that

Plaintiff was limited in her ability to manipulate with her left hand was

unsupported by his exam findings.

Finally, the ALJ found Dr. Drenguis's opinion was inconsistent with other

records in Plaintiff's medical file because the record as whole generally reflected

normal exam findings and few subjective complaints.  *Id.*  The Court finds the

ALJ's rejection of Dr. Drenguis's opinion is supported by substantial evidence.

### 3.  *DDS Consultants—Dr. Platter and Dr. Virji*

Plaintiff argues the ALJ erred in finding the opinions of Dr. Platter and Dr.

Virji persuasive.  ECF No. 17 at 16.  Dr. Platter and Dr. Virji provided consultative

assessments of Plaintiff's alleged impairments after reviewing Plaintiff's medical

records.  Tr. 27.  Both assessments concluded that Plaintiff was capable of

performing light work, with frequent climbing of ramps, stairs, balancing,

kneeling, crouching, and crawling; occasional climbing of ropes, ladders, and

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 20

scaffolds, and stooping.  *Id*.  The assessments indicated Plaintiff should avoid

concentrated exposure to extreme cold, vibrations, and hazards.  *Id*.  The ALJ

noted that neither consultation included an examination of Plaintiff, but both

assessments were based on a review of the available medical records and a

comprehensive understanding of agency rules and regulations.  *Id*.

Plaintiff's argument that the ALJ gave "greater weight" to Dr. Platter and

Dr. Virji is unpersuasive.  *Id*.  The ALJ concluded the assessments were well

supported by, and consistent with, the medical records in evidence, particularly the

finding that Plaintiff's fibromyalgia was controlled by medication.  *Id*.  "Where

evidence is susceptible to more than one rational interpretation, it is the ALJ's

conclusion that must be upheld."  *Burch*, 400 F.3d at 679 (citation omitted).  The

Court finds the ALJ's findings were supported by substantial evidence.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes

that the ALJ's decision is supported by substantial evidence and free of harmful

legal error.

//

//

//

//

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 21

1    **ACCORDINGLY, IT IS HEREBY ORDERED:**

2      1. Plaintiff's Motion for Summary Judgment (ECF No. 17) is **DENIED**

3      2. Defendant's Motion for Summary Judgment (ECF No. 22) is

4        **GRANTED**.

5      The District Court Executive is directed to file this Order, enter judgment for

6 Defendant accordingly, provide copies to counsel, and CLOSE this file.

7      DATED January 7, 2022.



THOMAS O. RICE
United States District Judge